**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DARYLL GOODING,**

       **Petitioner,**

**v.**                                 **Case No. 3:19cv3641-LC/MAF**

**MARK S. INCH, Secretary,
Florida Department of Corrections,**

       **Respondent.**
_____/

## REPORT AND RECOMMENDATION

On or about October 2, 2019, Petitioner Daryll Gooding, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. After direction by this Court, he filed an amended § 2254 petition. ECF No. 5. He also filed a supporting memorandum. ECF No. 6. On April 6, 2020, Respondent filed an answer, with exhibits. ECF No. 12. Petitioner has filed a reply. ECF No. 14.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the

reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By information filed December 23, 2015, in Escambia County Circuit Court case number 2015-CF-5469, the State of Florida charged Petitioner Daryll Gooding with two counts of transmission of child pornography, in connection with events that occurred on or about September 21, 2015, in violation of section 847.0137(2), Florida Statutes (2015); and thirteen (13) counts of possession of child pornography, in connection with events that occurred on or about December 4, 2015, in violation of sections 827.071(5) and 775.0847(3)(a), Florida Statutes (2015).  Ex. A at 1-6.[1]  At proceedings held July 5, 2016, Gooding entered an open nolo contendere plea to ten (10) counts of possession of child pornography, a second degree felony, and the remaining counts were nolle prossed.  Ex. B at 138-44 (transcript); Ex. A at 92.  On August 23, 2016, at the conclusion of a sentencing hearing that

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 12.

included witness testimony, the judge adjudicated him guilty and sentenced him to 150 months (12½ years) in prison on each count, to run concurrent, and designed him a sexual offender pursuant to section 943.0435, Florida Statutes.  Ex. A at 92 (transcript), 104-12 (judgment and sentence).

Gooding appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D16-4401, and his court-appointed counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. C.  Gooding filed a pro se brief, Ex. D, and an amended pro se brief, Ex. E.  On July 14, 2017, the First DCA per curiam affirmed the case without a written opinion.  Ex. F; Gooding v. State, 228 So. 3d 555 (Fla. 1st DCA 2017) (table).  The mandate issued August 11, 2017.  Ex. F.

Gooding sought review in the Florida Supreme Court.  Ex. G.  On July 24, 2018, that court dismissed the case, number SC18-1193.  Ex. H.

On January 16, 2018, Gooding filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. I at 8-39.  By order rendered May 17, 2018, the state post-conviction court denied relief.  *Id.* at 40-50 (exclusive of attachments).  Gooding appealed to the First DCA, assigned case number 1D18-2747.  On February 12, 2019, that court

per curiam affirmed the case without a written opinion.  Ex. L; Gooding v.
State, 264 So. 3d 128 (Fla. 1st DCA 2019) (table).  The mandate issued on
March 12, 2019.  Ex. L.

In the meantime, on October 4, 2018, Gooding filed a "Motion to
Correct Illegal Sentence" in the First DCA, assigned case number 1D18-
4348.  Ex. M.  The First DCA treated the case as a petition for writ of habeas
corpus and dismissed it on March 28, 2019.  Ex. N; Gooding v. State, 267
So. 3d 363 (Fla. 1st DCA 2019) (table).

As indicated above, Gooding filed a § 2254 petition in this Court on or
about October 2, 2019.  ECF No. 1.  He filed an amended § 2254 petition,
ECF No. 5, raising three grounds, two of which allege ineffective assistance
of counsel (IAC):

(1) **IAC – Trial Counsel**:   Counsel provided ineffective
assistance "in pleading Petitioner to crimes unsupported by
evidence and inadequate to charge by law."  ECF No. 5 at 4.
In particular, Gooding explains, "his attorney was ineffective
for failing to challenge or object to the scoresheet and that his
plea was involuntarily entered where the plea offer itself was
made only 15 minutes prior to the case proceeding to trial."
*Id.*   Further, "[t]his ambush by defense counsel placed
Petitioner in a position of unreasonable pressure without
proper or adequate time to reflect or consider Petitioner was
abandoning his rights to challenge improper charges, and
improperly informed of the total penalty and where the

evidence did not match the police report the Court relied upon to accept the plea." *Id.*

(2) **Eighth Amendment Violation – Sentence**:    Gooding asserts that his sentence of 12 years is cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution, where "[t]here was no victim, no violence, and no property damage," and he had no prior criminal history and an "extraordinary military record." *Id.* at 8.

(3) **IAC – Trial Counsel**:    Counsel provided ineffective assistance as Gooding's plea was involuntarily entered without a full competency evaluation. *Id.* at 9.

Respondent filed an answer, with exhibits.  ECF No. 12.  Gooding has filed a reply.  ECF No. 14.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the

doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86,

102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's

review "is limited to the record that was before the state court that

adjudicated the claim on the merits."  *Id.*

For IAC claims, the United States Supreme Court has adopted a two-

part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

The Strickland test applies to IAC claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting

McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'"  *Id.* at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258 (1973)).  That a plea is one of nolo contendere, as here, rather than guilty, does not warrant a different analysis for purposes of federal habeas corpus.  *See* North Carolina v. Alford, 400 U.S. 25, 35-37 (1970); *see also* Florida v. Royer, 460 U.S. 491, 495 n. 5 (1983) (explaining that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty").

### Ground 1:  IAC – Involuntary Plea

In his first ground, Petitioner Gooding asserts defense counsel provided ineffective assistance, resulting in his entry of an involuntary plea, by (a) not challenging the scoresheet, (b) ambushing him with the plea offer "only 15 minutes prior to the case proceeding to trial," and (c) not properly informing him of the total penalty.  ECF No. 5 at 6.  Gooding also asserts (d) "the evidence did not match the police report the Court relied upon to accept the plea."  *Id.*

### (a) Scoresheet

Gooding exhausted his IAC claim for not challenging the scoresheet

by raising it in at least two points of the second ground of his Rule 3.850 motion.  *See* ECF No. 5 at 6; ECF No. 12 at 13; Ex. I at 26-28 (Points 4 and 10).  The state post-conviction trial court denied the claim because the court found no merit to Gooding's claims of scoresheet error.  Ex. I at 45.  In particular, the court made the following findings:

> The Defendant raises many claims of purported scoresheet error.  The Defendant is not entitled to relief based on any claim of scoresheet error.
>
> Initially, it is not erroneous for an assistant state attorney, rather than the elected State Attorney, to prepare a scoresheet.  Fla. R. Crim. P. 3.704(d)(1) (stating that "*[t]he office of the state attorney* must prepare the scoresheets . . . ."); *see also* § 27.181(2), Fla. Stat.  The Defendant's arguments to the contrary are without merit.
>
> The Defendant was convicted of 10 counts of possession of child pornography contrary to section 827.071(5), Florida Statutes.  Although such offenses are generally third degree felonies, in the Defendant's case these counts were reclassified to second degree felonies pursuant to section 775.0847(3)(a), Florida Statutes.  The scoresheet accurately states the statutory maximum the Defendant faced was 150 years in state prison.  *See* Walsh v. State, 198 So. 3d 783 (Fla. 2d DCA 2016).
>
> In addition, a violation of section 827.071(5), Florida Statutes, generally constitutes a level 5 offense. § 921.0022(3)(e), Fla. Stat.  However, pursuant to section 775.0847, Florida Statutes, these offenses were scored "one level above the ranking under s. 921.0022 or s. 921.0023 of the offense committed."  Thus, all 10 of the Defendant's crimes were properly scored as level 6 offenses.
>
> The Defendant's scoresheet correctly scores the primary offense as a level 6 offense, which translates into 36 points.  The

scoresheet properly shows an additional 162 points for the nine additional level 6 offenses. (18 x 9 = 162). Therefore, the Defendant's scoresheet accurately reflects 198 sentencing points for the offenses in this case alone. (162 + 36 = 198). Attachment 5.

The only other imposition of sentencing points was an assessment of 0.2 points for a misdemeanor conviction of "possession of undersized fish." Even if these 0.2 points were erroneously imposed, any such error was harmless. Removing these 0.2 points reduces the Defendant's lowest permissible sentence from 127.65 months in state prison to 127.5 months in state prison. The Court imposed a sentence of 150 months in state prison. The record conclusively demonstrates that the Court would have imposed the same sentence even if these 0.2 sentencing points had not been scored, as the Court noted that this prior offense was "very, very minor." Attachment 4, at 43. The Defendant would not be entitled to resentencing even if the misdemeanor conviction for possession of undersized fish should not have been scored, as the error was de minimis. *See* Labovick v. State, 958 So. 3d 1065 (Fla. 4th DCA 2007).

*Id.* at 42-43. On appeal, the First DCA affirmed without a written opinion.

The state court record supports the findings of the post-conviction court. Ex. A at 19-20 (Criminal Punishment Code Scoresheet); 90-92 (transcript of sentencing hearing where judge indicates Gooding has "no prior record other than a very, very minor misdemeanor," he is "not going to depart in this case," and imposes sentence of 150 months). Because any error on the scoresheet was at most de minimis, counsel did not perform deficiently by not raising an objection. Further, even if counsel performed deficiently, such did not result in prejudice to Gooding given the

determination, supported by the record, that the state court would have imposed the same sentence regardless of the 0.2 points scored for the minor misdemeanor conviction.

### (b) Fifteen Minutes to Consider Plea Offer

Further, to the extent Gooding asserts his plea was involuntary because the plea was presented only fifteen minutes before the hearing, he also raised this claim in his Rule 3.850 motion. Ex. I at 28 (Point 7). The state post-conviction court denied the claim, making the following findings:

> [T]he Defendant claims that his plea was involuntary by alleging the plea offer in this case was presented only 15 minutes before the plea hearing. The record demonstrates that the Defendant is not entitled to relief on this claim. The Defendant swore under oath that no one forced or coerced him to enter his plea of nolo contendere. He also stated under oath he had no other questions of his attorney. Attachment 3, at 6. The Defendant is bound by his sworn assertions in the plea colloquy. Ezer v. State, 10 So. 3d 1175 (Fla. 4th DCA 2009). "[A] defendant should be estopped to receive an evidentiary hearing on a postconviction claim when the basis of the claim is that he lied under oath at the relevant hearing." Polk v. State, 56 So. 3d 804, 808 (Fla. 2d DCA 2011).

Ex. I at 45-46. On appeal, the First DCA affirmed the case without a written opinion.

As the state post-conviction court found, the record reflects that Gooding swore under oath that no one forced or coerced him to enter his plea and that he had no questions of his attorney. Ex. B at 143. In addition,

he affirmatively represented that his attorney had explained everything.  *Id.*

Specifically, during the plea colloquy, after Gooding was sworn, Ex. B at 139,

the following transpired:

> THE COURT:  Have you gone over this plea with your attorney?
>
> THE DEFENDANT:  I did.
>
> THE COURT:  Has he answered all your questions.
>
> THE DEFENDANT:  He has.
>
> THE COURT:  Are you satisfied with his services and advice?
>
> THE DEFENDANT:  I am.
>
> THE COURT:  All right.  Mr. Gooding, do you understand it's going to be a plea straight up to the Court and it looks like – so part of this is 1 through 5 are going to be dismissed and then he's going to be pleading to 6 through 15?
>
> MR. AMBROSE [prosecutor]:  Yes, sir.
>
> MR. GANN [defense counsel]:  That's correct, Your Honor.
>
> THE COURT:  Okay.  And do you understand, by entering this plea, you are going to be designated as a sexual offender?
>
> THE DEFENDANT:  Correct.
>
> THE COURT:  And has your attorney gone over what that means and what some of the requirements are?
>
> THE DEFENDANT:  [Inaudible].
>
> THE COURT:  Okay.  Has he adequately explained that to you?
>
> THE DEFENDANT:  He has.

THE COURT:  And do you understand that right now with the scoresheet, you score – the lowest permissible prison sentence is going to be 127.65 months and you could get up to 150 years; do you understand that?

THE DEFENDANT:  I do.

THE COURT:  And your attorney has gone over the scoresheet with you; is that correct?

THE DEFENDANT:  He has.

THE COURT:  Okay.  And he has no prior record, other than a fish case; right?

MS. AMBROSE [prosecutor]:  Yes, sir.

THE COURT:  Okay.  Do you understand, by entering this plea today, you are waiving the right to have a trial?

THE DEFENDANT:  I do.

THE COURT:  You are waiving the right to cross-examine state witnesses, present witnesses in your own behalf, and present any defenses that you may have?

THE DEFENDANT:  (Inaudible).

THE COURT:  All right.  Mr. Gooding, do you understand you're waiving the – the right to an appeal?

THE DEFENDANT:  (Inaudible).

THE COURT:  Has anybody forced or coerced you to enter this plea today?

THE DEFENDANT:  No.

THE COURT:   Has anybody made you any promises or

guarantees of what I'm going to do in this case for sentencing?

THE DEFENDANT:  No.

THE COURT:  Have you had any drugs or alcohol in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Are you on any psychiatric medications?

THE DEFENDANT:  No.

THE COURT:  Do you understand what's happening here today?

THE DEFENDANT:  (Inaudible).

THE COURT:  Okay.  Do you have any other questions of your attorney?

THE DEFENDANT:  No, sir.

THE COURT:  Okay.  And he has everything fully [sic] to you; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  All right.  And is this what you want to do today?

THE DEFENDANT:  (Inaudible).

THE COURT:  All right.  Do you do this because you are either guilty or it's in your best interest?

THE DEFENDANT:  My best interest.

*Id.* at 141-44.  The court accepted Gooding's plea of no contest to Counts 6

through 15, and specifically found his pleas was "knowingly, voluntarily, and

freely given." *Id.* at 144.

In addition, the written sentence recommendation plea form reflects that Gooding entered his nolo contendere plea straight to the court.  Ex. A at 9.  He certified that he was "satisfied with [his] attorney's advice and services and [his] attorney has not compelled or induced [him] to enter into this Sentence Recommendation by any force, duress, threats or pressure."  *Id.* at 11.  Under the "Acknowledgment of Defendant" section, signed by Gooding, he again indicated he was "satisfied with [his] attorney's advice and services and [his] attorney has not compelled or induced [him] to enter into this Sentence Recommendation by any force, duress, threats, pressure or promises."  *Id.* at 15.

Given these circumstances, any claim by Gooding that his plea was not knowing and voluntary, because of any alleged pressure or coercion by counsel, lacks merit as Gooding specifically agreed both at plea the hearing and by signing the Sentence Recommendation, that he was satisfied with his counsel's advice and services and, further, that his counsel had not forced or pressured him to enter the agreement.  *See*  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *see also* Stano v. State, 520 So. 2d 278, 279-80 (Fla.1988) (affirming summary denial of Rule 3.850 motion and agreeing with trial court's finding: "Once the Defendant enters a plea of guilty before this Court, and assures the Court under oath that the plea is voluntary, the Court will not go behind the plea. The plea cuts off inquiry into all that precedes it. The Defendant is barred from contesting events happening before the plea.").

### (c) Total Penalty

Gooding asserts his attorney provided ineffective assistance by not correctly informing him of the total possible penalty. ECF No. 5 at 5. Gooding raised this claim in his state Rule 3.850 motion in connection with a scoresheet claim. *See* Ex. I at 28 ("Point 10: Failure to investigate punishment code scoresheet for accuracy and misadvised me on maximum sentence court could impose. (150 years)"). Even if considered on its own, however, this argument lacks merit.

The state court record reflects that, during the plea hearing, the judge informed Gooding of the possible penalties:

THE COURT:  All right.  Mr. Gooding, you're here on two counts of transmission of pornography, each of which you could receive up to five years of state prison and a $5,000 fine.

And then – then in Counts 3 through 15, the charge is reclassification of possession of certain images of child pornography; what does that mean?

MS. AMBROSE [prosecutor]:  Yes, sir.  When there's ten or more and there's some different qualifications; one, being at least one of them is a motion picture, they can be reclassified from a third degree to a second degree felony.

THE COURT:  And so if you just have one, then all can be reclass –

MS. AMBROSE:  Well, you have to have at least ten.

THE COURT:  Oh, so if you have ten –

MS. AMBROSE:  And at least one of those has to be – there's some different characteristics.

THE COURT:  Okay.

MS. AMBROSE:  One of them – the most common is that one of them is a motion picture.

THE COURT:  All right.  But then it's not just – I mean, if you had 15, then all 15 could be reclassified, if you met this criteria?

MS. AMBROSE:  Yes, sir.

THE COURT:  Okay.  All right.  And for each of those, you could receive up to 15 years state prison and a $10,000 fine; do you understand that, Mr. Gooding?

THE DEFENDANT:  I do.

. . . .

THE COURT:  And do you understand that right now with the

> scoresheet, you score – the lowest permissible prison sentence
> is going to be 127.65 months and you could get up to 150 years;
> do you understand that?
>
> THE DEFENDANT:  I do.

Ex. B at 139-42.  In addition, the written Sentence Recommendation, signed

by Gooding, indicates that the maximum penalty for counts 3 through 15 is

"15 YSP each."  Ex. A at 9.  In that document, Gooding certified that he

understood "the maximum period of imprisonment and fines, as well as any

mandatory minimum sentence that apply, with regard to the charges to which

[he is] entering [his] plea as indicated in this Sentence Recommendation."

*Id.* at 11.  Under the "Acknowledgment of Defendant" section, signed by

Gooding, he agreed that, by signing the Sentence Recommendation, he had

"read and underst[oo]d the contents of this document, and if represented by

an attorney, that [he had] discussed with [his] attorney all of the ramifications

or consequences of entering a plea of guilty or nolo contendere to these

charges."  *Id.* at 15.

Given these circumstances, any claim by Gooding that his plea was

not knowing and voluntary, because his attorney did not correctly inform him

of the total possible penalty, lacks merit.  Even assuming his attorney did not

advise him of the total possible penalty, the record reflects that Gooding was

advised both in the written Sentence Recommendation he signed and by the

judge at the plea hearing, before he entered his plea.  *See* <u>Blackledge</u>, 431 U.S. at 73-74; <u>Stano</u>, 520 So. 2d at 279-80.

### (d)  Evidence

Gooding also asserts the evidence in the case did not match the police report relied on by the state court in accepting the plea.  ECF No. 5 at 5.  It does not appear that Gooding raised this specific argument in his state Rule 3.850 motion.  *See* Ex. I at 8-37.  Even if considered, however, this argument lacks merit as nothing in the state court record supports Gooding's claim that the evidence did not match the police report.  Further, the record reflects that Gooding stipulated to the factual basis to support his plea.

In particular, the written Sentence Recommendation containing Gooding's plea, and signed by Gooding, includes a section called "FACTUAL BASIS" which states, "The arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea."  Ex. A at 9.  The Probable Cause Arrest Affidavit for Gooding indicates he was being charged with thirteen (13) counts of possession of obscene material depicting child pornography and two (2) counts of promotion of obscene material depicting child pornography.  *Id.* at 7-8.  The Affidavit includes the following narrative:

The defendant, Daryll Roger Gooding, committed the offenses listed . . . on or about September 21, 2015, between 0118 and 0232 hours, your affiant completed downloads of several video files that were available for sharing from IP address 70.187.49.116.  [Two video files depicting sexual performance involving a child are described in detail.]  It should be noted that your affiant completed in excess of twenty (20) additional files depicting sexual performance that were being shared from Gooding's computer.

A subpoena was served to Cox Communications which revealed that the subscriber for 70.187.49.116 during the time of the downloads was Tracy Herring at 2706 Grainger Avenue in Pensacola, Florida.

On December 4, 2015, members of the Florida Department of Law Enforcement, along with other member agencies of the North Florida Internet Crimes Against Children Task Force, to include the Escambia County Sheriff's Office, Pensacola Police Department, and Homeland Security Investigations served a search warrant at 2706 Grainger Avenue.  Daryll Roger Gooding was located in a locked bedroom inside of the residence.  A desktop computer was located in Gooding's bedroom that was actively operating and downloading child pornography files at the time of the search warrant.

During a post Miranda interview, Gooding acknowledged using peer to peer programs including Limewire and ARES to download child pornography files.  Gooding said that he used various search terms to seek child pornography files including PTHC (preteen hard core) and 10yo (10 year old).  Gooding acknowledged that the files that he downloaded were stored in a shared folder on his computer and could be shared with other people using peer to peer software.  Gooding advised that there would be hundreds of child pornography files on his computer.

Detective Chris Wilkinson from Pensacola Police Department conducted a preview of Gooding's desktop computer and located at least thirteen (13) videos which depicted children engaging in sexual activity.  These files were located in the My Shared Folder

on Gooding's computer.  The following search terms were being used by Gooding in the ARES peer to peer program:  gay pedo, sdpa gay, pthc gay, inzest, little sister, brother & sister, beastiality & pthc, 13yo, 12yo, 5yo, and mom & boy.  The following files that depicted the sexual performance of child and were used to charge Gooding are listed [in a numbered recitation of specific, named files, each starting with c:\users\daryll\desktop\my shared folder\].

Based on the above facts, Gooding was arrested and transported to the Escambia County Jail where he was charged . . . .  Bond was set at $100,000.

*Id.* at 7-8.

Given these circumstances, any allegations by Gooding that his plea was not knowing and voluntary, because the evidence in the case did not match the police report, lack merit as Gooding conceded the Probable Cause Arrest Affidavit constituted the factual basis to support the charges.

For all the foregoing reasons, Petitioner Gooding has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2:  Eighth Amendment Violation – Sentence

In his second ground, Gooding asserts that his twelve-year prison sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.  ECF No. 5 at 8.  Gooding explains

"[t]here was no victim, no violence, and no property damage," and he had no prior criminal history and an "extraordinary military record." *Id.* "Such sentencing and length of imprisonment for victimless offenses constitutes Cruel and very unusual punishment under the 8th Amendment." *Id.*

Gooding raised this claim in his state Rule 3.850 motion. Ex. I at 16 (Ground 1), 25 (Point 11). The state post-conviction court denied the claim, making the following findings:

> The Defendant claims his sentence is unconstitutional. The Court finds the Defendant's argument to be without merit.
>
> To violate the Cruel and Unusual Punishments Clause, a prison sentence must, at least, be grossly disproportionate to the crime. Adaway v. State, 902 So. 2d 746, 749 (Fla. 2005). A life sentence is not grossly disproportionate for the crime of possessing one and a half pounds of cocaine. Harmelin v. Michigan, 501 U.S. 957 (1991). Nor is a twenty-five years to life sentence grossly disproportionate for the crime of shoplifting three golf clubs after previous convictions of three burglaries and one robbery. Ewing v. California, 538 U.S. 11 (2003). The Defendant was sentenced to 12.5 years in state prison, less than the statutory maximum for a single second degree felony. Edwards v. State, 885 So. 2d 1039, 1039 (Fla. 4th DCA 2004) ("We cannot say that a sentence of fifteen years for the crime of escape violates the cruel and unusual punishment clause. . . ."). The Defendant's sentences simply do not rise to the level of cruel or unusual. Rogers v. State, 96 So. 3d 922 (Fla. 5th DCA 2012).

Ex. I at 43-44. On appeal, the First DCA affirmed without a written opinion.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a a 'narrow proportionality principle' that 'applies to

noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting

Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring

in part and concurring in judgment)); *see* U.S. Const. amend. VIII.   The

Eleventh Circuit has explained that the U.S. Supreme Court's "insistence on

judicial restraint in this area is evident in the emphasis it puts on the principle

that substantial deference is owed to the legislative branch, which has the

responsibility for setting criminal penalties, and the principle that the Eighth

Amendment does not embody any particular theory of, or approach to,

punishment."   U.S. v. Farley, 607 F.3d 1294, 1343 (11th Cir. 2010) (citing

Harmelin, 501 U.S. at 998-99).  Further, "[t]hose principles are reinforced by

Harmelin's instruction that '[t]he Eighth Amendment does not require strict

proportionality between crime and sentence,' and 'forbids only extreme

sentences that are 'grossly disproportionate' to the crime.'"   *Id.* (quoting

Harmelin, 501 U.S. at 1001).  Thus, the Eleventh Circuit points out, "[t]hat is

why in non-capital cases '*successful* challenges to the proportionality of

particular sentences are exceedingly rare,' . . . so rare in fact that our own

Court has never found a term of imprisonment to violate the Eighth

Amendment, and outside the special category of juvenile offenders the

Supreme Court has found only one to do so" and "that one[, in Solem v.

Helm,] was for a sentence of life imprisonment without parole imposed on a

petty criminal who wrote a bad check for $100, the latest in a string of his relatively minor, nonviolent offenses." *Id.* (quoting Harmelin, 501 U.S. at 1001); *see* Solem v. Helm, 463 U.S. 277, 280-81 (1983). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005); *accord, e.g.*, United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009).

In this case, as the state post-conviction court found, after entering his plea to ten second degree felonies, Gooding was sentenced to 12½ years in prison on each count, to run concurrently. Thus, his total prison sentence is less than the 15-year statutory maximum for one second degree felony, is not grossly disproportionate to the crime, and, therefore, does not violate the Eighth Amendment. *See, e.g.*, Moriarty, 429 F.3d at 1024; Adaway, 902 So. 2d at 749.

Gooding has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 3:  IAC – No Competency Evaluation

In his third ground, Gooding asserts his attorney provided ineffective

assistance by allowing him to enter a plea without a full competency evaluation, thereby resulting in an involuntary plea. ECF No. 5 at 9-10. Gooding raised this claim in his state Rule 3.850 motion. Ex. I at 25 (Point 12), 27 (Point 5). The state post-conviction court denied the claim, making the following findings:

> The Defendant's claim that his counsel was ineffective for failing to have the Defendant evaluated for competency is also without merit. The test for whether a defendant is competent to stand trial is whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as a factual understanding of the proceedings against him. *See* Whitfield v. State, 164 So. 3d 745 (Fla. 5th DCA 2015), citing Dusky v. United States, 362 U.S. 402 (1960); *see also* Fla. R. Crim. P. 3.211(a)(2).

> The record demonstrates that the Defendant was evaluated for the probability of re-offense by Dr. Bingham. Attachment 4, at 6-7. As counsel noted in one of his questions to Dr. Bingham, "I've got a gentleman here that's 47 years old, no real prior criminal history of any kind. He's spent 20 years in the Navy. He's retired with commendations. He's operated his own business successfully." Attachment 4, at 15. Counsel was not deficient for failing to have such a person evaluated for competency to stand trial. Dr. Bingham's testimony demonstrates that counsel was not deficient for failing to have the Defendant evaluated for competency to stand trial.

> The Defendant's attorney asked Dr. Bingham if he performed a "Mental Status Examination." Dr. Bingham testified as follows:

>> I did. And the purpose of a Mental Status Examination is to determine a person's mental stability. And what we are looking for there is any major or significant mental

disorders, such as, primarily, a psychos[i]s, that is whether they are [experiencing] delusional thought processes, whether they are having or experiencing perceptional disturbances, such as auditory or visual hallucinations. **Those were absent in this particular case**.

Attachment 4, at 7-8 (emphasis added).

Dr. Bingham testified that the Defendant was a member of the United States Navy. The Defendant's work experience demonstrates that the Defendant is an intelligent individual. Attachment 4, at 8-9. Dr. Bingham also testified that the Defendant's test results did not indicate a personality disorder and, "specifically, no antisocial orientation." Rather, the Defendant was experiencing "generalized anxiety and a depressive mood, which probably was exacerbated by situational circumstances." *Id*. at 13-14.

The Court does not dispute the Defendant suffers from mental illness. "Defense counsel, prosecutors and trial judges deal daily with accuseds suffering all degrees of mental disorders." Baker v. State, 404 So. 2d 1151, 1151 (Fla. 5th DCA 1981) (emphasis added). However, the Defendant's attorney had the Defendant evaluated by Dr. Bingham. The mental illnesses described in Dr. Bingham's testimony do not support a conclusion that the Defendant was incompetent to stand trial. Accordingly, the Defendant's counsel was [not] deficient for not challenging the Defendant's competency.

Ex. I at 46-47. Given the court's findings, it appears most likely that the omission of "not" in the final sentence quoted above constituted a scrivener's error. On appeal, the First DCA affirmed without a written opinion.

In Dusky v. United States, the U.S. Supreme Court set forth a two-pronged standard for determining legal competency: "[T]he test must be whether [the defendant] has sufficient present ability to consult with his

lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  362 U.S. 402, 402 (1960); *see* Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 481 n.5 (11th Cir. 2012).  "Evidence of incompetence 'must indicate a present inability to assist counsel or understand the charges' [and] [a]bsent evidence of such an inability, evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial."  Pardo v. Sec'y, Fla. Dep't of Corr., 587 F.3d 1093, 1101 (11th Cir. 2009) (quoting Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995)).

Here, the state court record supports the post-conviction judge's findings regarding Dr. Bingham's evaluation of Gooding.  *See* Ex. A at 51-66.  Dr. Bingham testified at Gooding's sentencing hearing, held August 23, 2016, that he prepared a report on Gooding called a Forensic Mental, dated May 2016, as part of his evaluation to determine Gooding's probability of reoffense.  *Id.* at 53.  Dr. Bingham testified:

> Q.  Okay.  And did you observe, during your examination of him, his behavior, and did you perform a Mental Status Examination?
>
> A.  I did.  And the purpose of a Mental Status Examination is to determine a person's mental stability.  And what we're looking for there is any major or significant mental disorders, such as primarily a psychoses, that is, whether they are expensing delusional thought processes, whether they are having or

experiencing perceptional disturbances, such as auditory or
visual hallucinations.  Those were absent in this particular case.

*Id.* at 54-55.  Dr. Bingham also testified that he had done a Million Clinical

Multiaxial Inventory, "a personality type inventory," and "[i]n his case there

was no noted personality disorder, and, specifically, no antisocial

orientation."  *Id.* at 60.  Dr. Bingham testified the test "did show that he was

experiencing some generalized anxiety and a depressive mood, which

probably was exacerbated by situational circumstances."  *Id.* at 60-61.

Based on his evaluation, Dr. Bingham recommended that Gooding

participate in a sexual offender treatment program, explaining that "he would

qualify for an outpatient setting, and because he is a low risk."  *Id.* at 63-64.

Given this, the state post-conviction court did not unreasonably conclude that

Gooding's mental condition, described in Dr. Bingham's testimony, equated

to incompetency to stand trial.  *See, e.g.,* Battle v. United States, 419 F.3d

1292, 1299 (11th Cir. 2005) ("[N]ot every manifestation of mental illness

demonstrates incompetence to stand trial; rather, the evidence must indicate

a *present* inability to assist counsel or understand the charges." (quoting

Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (emphasis

added)).

Further, the transcript of the plea hearing reflects nothing indicating

Gooding did not understand what he was doing.  Rather, as excerpted

above, Gooding answered the judge's questions during the plea colloquy and indicated he understood what was taking place, he had consulted with his attorney, and he believed entering the plea was in his best interest. When the judge asked him whether he had had any drugs or alcohol or any psychiatric medication, Gooding answered "no." Ex. B at 143. The written Sentence Recommendation form containing the plea includes a certification by Gooding that he had "not had any drugs, alcohol, or medication of any kind in the past 24 hours" and, further, he had "never been declared legally incompetent or insane," and he was "enter[ing] this Sentence Recommendation fully and voluntarily of [his] own accord and with full understanding of all matters set forth in the information or indictment and in this Sentence Recommendation." Ex. A at 11. The Sentence Recommendation also includes a certification by defense counsel that "[i]n [counsel's] opinion the defendant is mentally competent." *Id.* at 15. Nothing indicates counsel performed deficiently with regard to any competency evaluation or determination. *See* Nixon v. State, 932 So. 2d 1009, 1020 (Fla. 2006) ("When there is no reason to expect that a defendant is incompetent, it cannot be deficient performance if counsel does not request a competency examination.").

Moreover, to succeed on this IAC claim, Gooding would also have had

to show "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 479 (11th Cir. 2012). Gooding did not show, or even allege, that such would have occurred. *See* ECF No. 5 at 9; ECF No. 6 at 9-11; Ex. I at 25, 27.

Based on the foregoing, Petitioner Gooding has not demonstrated that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Gooding is not entitled to federal habeas relief. Accordingly, it is respectfully **RECOMMENDED** that the amended § 2254 petition, ECF No. 5, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule

11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

<u>**Recommendation**</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 5). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 18, 2020.

<u>S/  Martin A. Fitzpatrick</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**